# O'Neil *v.* Schneller, Appellant.

*Master and servant—Insubordination—Discharge—Evidence.*

An employee, engaged for a given term, to charge the master with liability for wrongful discharge, must have rendered faithful service and have so conducted himself toward his fellow employees and others who are brought in contact with him, in a manner so as not to interfere with his master's business or with his or his fellow employees' usefulness in the proper discharge of their duties. .

Where the evidence sustaining a justification for discharge is disputed, the question of justification is for the jury, but where the facts are undisputed or admitted, it becomes one. of law for the court.

A master is not compelled to keep an employee, hired for a given term, in his service until the. master's business has suffered pecuniary loss, where the employee is disobedient and quarrelsome with coemployees.

When the master is justified in believing the employee's conduct is such that an injury or loss to the business or a disorganization of the affairs is likely to follow from such conduct if it is permitted to continue, the master is warranted in discharging the employee.

Argued Dec. 8, 1915.    Appeal, No. 90, Oct. T., 1915,

by defendant, from judgment of C. P. Northampton Co., April T., 1912, No. 57, on verdict for plaintiff in case of Richard O'Neill v. W. F. Schneller, et al., Co-partners, trading as Schneller & Snyder Co. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Assumpsit for wages. Before JOHNSON, P. J.

At the trial it appeared that the defendant was employed by the plaintiff as a cutter in their tailoring business for a period of one year from September 1, 1911, at a salary of $50 a week. In January, 1912, difference arose as to the plaintiff's manner of performing his work, and his conduct towards other employees and the members of the defendants' firm. There was conflicting evidence as to whether he was actually discharged, or whether he left by mutual consent.

The court after submitting to the jury the evidence relating to the discharge, and also the evidence as to the manner in which he did his work charged on the question of insubordination as follows:

Now the question for you to determine is was this plaintiff a disobedient and insubordinate servant. It was his duty to act in a reasonable manner to work for the best interests of his employers and be obedient to them in a reasonable and proper manner and serve them in a reasonable and proper way; and you will take all the evidence in the case and see whether or not he was obedient and a subordinate servant in a reasonable and proper manner. You will recall all the testimony, and it will be for you to determine whether or not these things existed. What was the conduct of the plaintiff? You will have to determine that and whether it was proper conduct or not. We do not say that every slight mistake would be a good ground for a discharge. It is not expected that the plaintiff is perfect. A perfect man or a perfect woman does not exist on this land.

We don't expect that.  We must be reasonable.  Therefore the laws say that he be required to act in a reasonable manner, that he be reasonably obedient and reasonably subordinate so that he could work for the best interests of the defendants.  While this is required it is not required that the plaintiff be a perfect man in every aspect of his demeanor, but that he would act in a reasonable and proper manner so as to serve the best interests of the defendants.  [Now you take his conduct as you got it from the testimony, his language, his demeanor, his behavior when he was in his employment, working for the defendants, to say whether he was reasonably obedient and subordinate or not.  You will remember that the defendants must prove that he was disobedient and insubordinate to such an extent as to injure the defendants.  The burden is on the defendants to prove that.] (3)   When the plaintiff has proved the contract and the discharge the burden in the first instance is shifted to the defendants to prove by the weight of the evidence that the discharge was on good ground, was for proper legal cause.  These are the issues that you are to determine from the evidence.  First was there a discharge or was there a termination of the contract by mutual consent.  If it was terminated by mutual consent of the parties, that would be the end of the case, and your verdict would be for the defendants; but if there was a discharge then the defendants would have to prove by the weight of the evidence that the discharge was for cause, and if it was for a proper legal cause, then your verdict would have to be for the defendants; but if he was discharged not for cause, then your verdict would have to be for the plaintiff.

Verdict and judgment for plaintiff for $1,074.38.  Defendants appealed.

*Errors assigned,* amongst others, were (1) in refusing binding instructions for defendant and (3) portion of charge as above quoting it.

*J. W. Fox,* with him *E. J. Fox,* for appellants.—Faithful service is a condition precedent to the right of a servant to recover wages. Misconduct inconsistent with the relation of master and servant will justify the master in putting an end to the contract of service at any time: Singer v. McCormick, 4 W. & S. 265; Elliott v. Wanamaker, 155 Pa. 67; Peniston v. John Y. Huber Co., 196 Pa. 580; Carson v. Hosiery Co., 15 Pa. Superior Ct. 476; Matthews v. Park Bros. & Co., Ltd., 159 Pa. 579; Hand v. Clearfield Coal Co., 143 Pa. 408.

*Paul C. Hamlin,* with him *F. H. Lehr, A. J. and L. J. Bamberger,* for appellee.—The question of the existence of a ground for discharge, upon which a justification can be based by the employer, is for the jury: Wilke v. Harrison, 166 Pa. 202; Vandevort v. Wheeling Steel & Iron Co., 194 Pa. 118; Second Natl. Bank, Etc., v. Hoffman, 229 Pa. 429; Allentown Iron Co. v. McLaughlin, 24 W. N. C. 343,

OPINION BY KEPHART, J., May 8, 1916:

An employee, engaged for a given term, to charge the master with liability for wrongful discharge, must have rendered faithful service and have so conducted himself toward his fellow employees, and others who are brought in contact with him, as not to interfere with his master's business or with his or his fellow employees' usefulness in the proper discharge of their duties: Hand v. Clearfield Coal Company, 143 Pa. 408; Matthews v. Park Bros. & Co., Lim., 159 Pa. 579. Where the evidence sustaining a justification for discharge is disputed, the question of justification is for the jury, but where the facts are undisputed or admitted, it becomes one of law for the court: Carson v. Hosiery Co., 15 Pa. Superior Ct. 476; Peniston v. John Y. Huber Co., 196 Pa. 580. The appellants offered evidence of abusive, profane and disrespectful language used by the appellee to his superior and to the men directly under him, causing

his superior officer and those men to quit the appellants' service. It was also shown that the appellee was an incompetent workman. Fully one-third of the clothing cut by him was returned for alteration. These charges were denied by the appellee. The jury should have been instructed that if these charges were true the appellants would have been justified in discharging the appellee. There is no condition of service so menial that would warrant the use of language here used and, if true, its inevitable result must have been trouble in the appellants' establishment. The appellee denies these statements, some inferentially, others directly, and the question of credibility was for the jury.

The court instructed the jury to take the conduct of the plaintiff, his language, demeanor, and behavior when in the employ of the defendants, and say whether he was reasonably obedient and subordinate; that the burden was on the defendants to prove that he was disobedient and insubordinate "to such an extent as to injure the defendants." This imposed too heavy a burden on the defendants. It was not necessary for the defendants to show that the appellee's conduct caused them to suffer any loss. A master is not compelled to keep an employee, hired for a given term, in his service until the master's business has suffered pecuniary loss, where the employee is disobedient and quarrelsome with coemployees. It is impossible to measure the damage which such employee might cause to the master's business through loss of custom and other avenues that may be unknown to the master. When the master is justified in believing that the employee's conduct is such that an injury or loss to the business or a disorganization of the affairs is likely to follow from such conduct if it is permitted to continue, the master would be warranted in discharging the employee. The effect of the trial court's charge was to cause the defendant to show an actual loss. In this the court erred and the error was not cured by

---

196, (1916).]          Opinion of the Court.

any point submitted or in the charge as a whole.  The third assignment of error is sustained.

The fact of discharge was denied.  The substantial point of difference in the testimony was whether the plaintiff, in his endeavor to secure other employment, was required to return in two weeks, or had he unlimited time in which to secure employment, and was four weeks an unreasonable length of time to be absent.  When he returned at the end of four weeks his place had been filled and he was refused employment.  Under the plaintiff's version of the conversation with Taylor, these questions were for the jury.  The first and second assignments are overruled.

The judgment is reversed and a venire facias de novo is awarded.